```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - X
                                           :   ECF CASE
JOSHUA PROWISOR,                           :
                                               05 Civ. 0166 (WCC)
                      Plaintiff,           :

         - against -                       :   OPINION
                                               AND ORDER
BON-TON, INC., TOWN OF NEWBURGH and        :
ROGER S. ROTH, sued in his individual      :
capacity,                                  :

                      Defendants.          :
- - - - - - - - - - - - - - - - - - - - - X
```

**A P P E A R A N C E S :**

SUSSMAN LAW OFFICES
**Attorneys for Plaintiff**
40 Park Place
P.O. Box 1005
Goshen, New York 10924

MICHAEL H. SUSSMAN, ESQ.
    Of Counsel

EUSTACE & MARQUEZ
**Attorneys for Defendant Bon-Ton, Inc.**
1311 Mamaroneck Avenue, 3rd Fl.
White Plains, New York 10605

ROSE M. COTTER, ESQ.
    Of Counsel

LAW OFFICES OF MONTE J.
  ROSENSTEIN, P.C.
**Attorneys for Defendants Town of
  Newburgh and Roger S. Roth**
250 Crystal Run Road
P.O. Box 2215
Middletown, New York 10940

MONTE J. ROSENSTEIN, ESQ.
    Of Counsel

**Copies E-Mailed to Counsel of Record**

**CONNER, Senior D.J.:**

Plaintiff Joshua Prowisor brings this § 1983 action against defendants the Town of Newburgh (the "Town"), Town Police Officer Roger S. Roth, in his individual capacity, and Bon-Ton, Inc. (collectively, "defendants") for violations of his Fourth and Fourteenth Amendment rights arising out of his detention by Bon-Ton department store security guards and subsequent arrest by Officer Roth based on suspicion of shoplifting. Defendants now move for summary judgment pursuant to FED. R. CIV. P. 56. For the reasons stated herein, defendants' motions are granted.

## BACKGROUND

On January 28, 2004, Prowisor, a thirty-three year old Caucasian male, entered the Bon-Ton department store in Newburgh, New York for the asserted purpose of exchanging certain clothing items. (Pl. Rule 56.1 Stmt. ¶¶ 1, 6, 10.) Prowisor claims that after he selected larger sizes of the returnable items, he brought both the returnable and new items, along with the receipts reflecting the prior purchases, to the sales counter, where he deposited them before returning to the sales floor to continue shopping. (*Id.* ¶¶ 12-14.) At some point, Prowisor approached a display of earmuffs and selected a pair before continuing to shop in other areas of the store. (*Id.* ¶¶ 16, 18-19.) Prowisor asserts that he later decided not to buy the earmuffs and placed them back where he had found them.[1] (*Id.* ¶¶ 19-21; Prowisor Dep. at 34-36.) Immediately thereafter, and as he was heading to the sales counter, Prowisor received a cellular telephone call from his girlfriend. (Pl. Rule 56.1 Stmt. ¶ 23.)

---

[1] Bon-Ton contends that its security guards observed Prowisor conceal the earmuffs in his right jacket pocket. (Carlson Dep. at 14; Rajcoomar Tr. Testimony at 47; Sussman Decl., Ex. 6 (Bon-Ton Security Report).) Lloyd Rajcoomar, the senior security guard, averred that Prowisor was in possession of the earmuffs when they stopped him, and that he attempted to toss the earmuffs away while being escorted to the store security office. (Sussman Decl., Ex. 6.)

In an attempt to get better reception, Prowisor began walking around the store, but hung up after he could not get a clear signal. (*Id.*) As he was returning to the sales counter (*id.* ¶¶ 24-25, 27-28), Prowisor was approached by two Bon-Ton security guards, Rajcoomar and Kenneth Carlson, who accused Prowisor of shoplifting.[2] (*Id.* ¶ 30; Def. Bon-Ton Am. Rule 56.1 Stmt. ¶ 4.)

While the parties' accusations regarding their respective behavior toward one another differ drastically (Prowisor Dep. at 45, 49-50, 53; Carlson Dep. at 20-22; Sussman Decl., Ex. 6), it is undisputed that the two security guards escorted Prowisor to the store security office, at which point the security guards called the Town Police Department. (Pl. Rule 56.1 Stmt. ¶ 35; Def. Bon-Ton Am. Rule 56.1 Stmt. ¶ 3.) Officer Roth was dispatched to the store, having been informed by the dispatcher that Bon-Ton had placed an individual in custody for suspected larceny. (Defs. Town/Roth Rule 56.1 Stmt. ¶ 3; Def. Bon-Ton Am. Rule 56.1 Stmt. ¶ 3.) Roth testified that when he arrived, the door to the store security office was closed. (Roth Dep. at 65.) After entering the room, Rajcoomar and Carlson informed Roth that they had witnessed Prowisor steal the earmuffs and that they wished to institute criminal proceedings. Rajcoomar, as the senior security guard and Carlson's supervisor, signed and swore to a Complaint/Information averring the facts supporting the charge of theft. (Defs. Town/Roth Rule 56.1 Stmt. ¶¶ 4-5; Def. Bon-Ton Am. Rule 56.1 Stmt. ¶¶ 4-5.) Despite Prowisor's protestations, Roth handcuffed and arrested him. (Pl. Rule 56.1 Stmt. ¶¶ 49-52.) Roth was not given the allegedly shoplifted earmuffs, which, after being stored in Bon-Ton's security locker for 15 days, were returned to the sales floor. (*Id.* ¶¶ 54, 92; Carlson Dep. at 12-13.) Nor did the security guards show Prowisor or Roth the videotape recorded by the store

---

[2] Bon-Ton asserts that its security guards intercepted Prowisor after he had exited the store through the shopping mall entrance/exit. (Carlson Dep. at 14; Rajcoomar Tr. Testimony at 48; Sussman Decl., Ex. 6.)

security cameras that allegedly showed Prowisor's actions. (Pl. Rule 56.1 Stmt. ¶¶ 37-39, 73, 94; Rajcoomar Tr. Testimony at 65; Carlson Dep. at 23-24.)

Roth then transported Prowisor to the Newburgh Police Department where he was booked. (Defs. Town/Roth Rule 56.1 Stmt. ¶ 6; Def. Bon-Ton Am. Rule 56.1 Stmt. ¶ 6; Pl. Rule 56.1 Stmt. ¶¶ 80-81.) Roth told Prowisor that he had been "arrested on the sworn statement of another person and the Town of Newburgh is acting as an agent of the Bon Ton and that goes into the determination of an arrest being made." (Roth Dep. at 39.) According to plaintiff, Roth, upon looking at Prowisor's driver's license, commented, "Well, you're not Puerto Rican," apparently in response to the security guard's comments to Roth that Prowisor was of Puerto Rican descent. (Pl. Rule 56.1 Stmt. ¶¶ 84-85.) Defendants assert that Roth's statement was made in response to plaintiff's protestations that the security guards detained him because they thought he was Puerto Rican. (Defs. Town/Roth Rule 56.1 Stmt. ¶ 6; Def. Bon-Ton Am. Rule 56.1 Stmt. ¶ 6.) Plaintiff was released on his own recognizance, and Roth drove plaintiff back to his car in the shopping mall parking lot. (Pl. Rule 56.1 Stmt. ¶ 86 & n.10.) The events, in their entirety, took no more than 45 minutes. (*Id.* at n.10; Prowisor Dep. at 69; Roth Dep. at 5-7.)

Plaintiff subsequently was acquitted following a jury trial in the Justice Court of the Town of Newburgh. (Defs. Town/Roth Rule 56.1 Stmt. ¶ 7; Def. Bon-Ton Am. Rule 56.1 Stmt. ¶ 7.)

## DISCUSSION

### I. Standard of Review

Under FED. R. CIV. P. 56, summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV.

3

P. 56(c); *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-50 (1986). A fact is material only if, based on that fact, a reasonable jury could find in favor of the non-moving party. *Anderson*, 477 U.S. at 248. The burden rests on the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See Anderson*, 477 U.S. at 255. To defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

## II.     Section 1983 State Actor Requirement

Plaintiff alleges Bon-Ton is liable for false arrest and malicious prosecution under § 1983 because its security guards "acted in concert" with Officer Roth in order to effectuate plaintiff's arrest. (Complt. ¶¶ 24, 32.) To state a claim under § 1983, a plaintiff must allege a deprivation of a federal right by someone acting under color of state law. *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002). "For a private individual or entity to be deemed to have been acting under color of state law the allegedly unconstitutional conduct of which plaintiff complains must be 'fairly attributable to the state.'" *Bishop v. Toys "R" Us-NY LLC*, 414 F. Supp. 2d 385, 396 (S.D.N.Y. 2006) (quoting *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (internal quotations omitted), *cert. denied*, 539 U.S. 942 (2003)). Conduct will be "fairly attributable to the state" where there is "'such a close nexus between the State and the challenged action that

seemingly private behavior may be fairly treated as that of the State itself.'" *Id.* (quoting *Tancredi*, 316 F.3d at 312). "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello*, 292 F.3d at 324. "Instead, there must be a sufficiently high level of entanglement between the state and the private actor such that the latter can be considered the state itself." *Milton v. Alvarez*, No. 04 Civ. 8265, 2005 WL 1705523, at *3 (S.D.N.Y. July 19, 2005); *see also Tancredi*, 316 F.3d at 313 ("State action may properly be found where the state exercises coercive power over, is entwined in [the] management or control of, or provides significant encouragement, either overt or covert to, a private actor, or where the private actor operates as a willful participant in joint activity with the State or its agents, is controlled by an agency of the State, has been delegated a public function by the state, or is entwined with governmental policies.").

"Generally, the acts of private security guards, hired by a store, do not constitute state action under § 1983." *Guiducci v. Kohl's Dep't Stores*, 320 F. Supp. 2d 35, 37 (E.D.N.Y. 2004) (collecting cases); *see also Bishop*, 414 F. Supp. 2d at 396. Here, neither the Complaint nor the evidence before the Court indicates sufficient relationship of the Bon-Ton security guards to the Town Police to establish either the close nexus or high level of entanglement standard. *See Milton*, 2005 WL 1705523, at *3. Rather, Bon-Ton merely called the police to have a suspected shoplifter arrested, a situation courts in the Second Circuit have repeatedly held does not constitute state action absent special circumstances, *i.e.*, guards sworn as "special patrolman" or cooperative interactions of guards and police. *See*, *e.g.*, *Ciambriello*, 292 F.3d at 324; *Bishop*, 414 F. Supp. 2d at 396; *Milton*, 2005 WL 1705523, at *3; *Guiducci*, 320 F. Supp. 2d at 37-38; *Newman v. Bloomingdale's*, 543 F. Supp. 1029, 1032 (S.D.N.Y. 1982).

5

Therefore, because this Court finds that Bon-Ton and its employees cannot be considered to be state actors or to have acted under color of state law, plaintiff's § 1983 claims against Bon-Ton are dismissed with prejudice.

### III. False Arrest and Malicious Prosecution

#### A. Probable Cause

"A section 1983 claim for false arrest . . . is identical to a claim for false arrest under New York law." *Milton*, 2005 WL 1705523, at *3; *see also Hickey v. City of New York*, No. 01 Civ. 6506, 2004 WL 2724079, at *6 (S.D.N.Y. Nov. 29, 2004) (citing *Posr v. Doherty*, 944 F.2d 91, 94 (2d Cir. 1991)) (noting that, in New York, § 1983-based false arrest claims are "distinguished from their state law analogues only by the requirement that the tortfeasor act 'under color of state law'"). Therefore, this Court must look to the New York State law of false arrest. *See id.*; *see also Posr*, 944 F.2d at 96. In order to establish a claim for false arrest, plaintiff must prove: (1) defendant intended to confine plaintiff; (2) plaintiff was conscious of the confinement; (3) plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *See Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). Probable cause acts as a complete bar to a false arrest claim. *See*, *e.g.*, *Kent v. Katz*, 312 F.3d 568, 573 (2d Cir. 2002); *Miro v. City of New York*, No. 95 Civ. 4331, 2002 WL 1163580, at *3 (S.D.N.Y. June 3, 2002) ("A claim for false arrest or false imprisonment as an unconstitutional deprivation of civil rights under § 1983 may be established only if there was no probable cause to support plaintiff's arrest and detention.").

Probable cause also acts as an absolute defense to a cause of action for malicious prosecution. *See Maron v. County of Albany*, No. 05 Civ. 3354, 2006 WL 328284, at *1 (2d Cir. Feb. 13, 2006).

In New York, § 1983-based malicious prosecution claims, like false arrest claims, are "distinguished from their state law analogues only by the requirement that the tortfeasor act 'under color of state law.'" *Hickey*, 2004 WL 2724079, at *6 (citing *Posr*, 944 F.2d at 94). Accordingly, this Court looks to the New York State law of malicious prosecution, which requires a plaintiff to prove: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (internal quotations omitted). "There must be 'a showing of some deliberate act punctuated with awareness of "conscious falsity" to establish malice.'" *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 423 (S.D.N.Y. 2002) (quoting *Caldarola v. DeCiuceis*, 142 F. Supp. 2d 444, 452 (S.D.N.Y. 2001)). "Typically, a warrantless deprivation of liberty from the moment of arrest to the time of arraignment will find its analog in the tort of false arrest, while the tort of malicious prosecution will implicate post-arraignment deprivations of liberty." *Mack v. Town of Wallkill*, 253 F. Supp. 2d 552, 561 (S.D.N.Y. 2003) (citing *Raschid v. News Syndicate Co.*, 239 A.D. 289, 267 N.Y.S. 221, 225 (1st Dep't 1933) ("A charge and an arrest do not amount to a prosecution . . . . [Malicious prosecution] lies only when a legal prosecution, a judicial proceeding, has been maliciously, and without probable cause, instituted against the plaintiff, and has been terminated in the plaintiff's favor.") (internal quotations and citation omitted), *aff'd*, 265 N.Y. 1, 191 N.E. 713 (1934)).

It is well established that an arrest without probable cause is a constitutional violation. *See, e.g.*, *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991), *cert. denied sub nom. Lillis v. Golino*, 505 U.S. 1221 (1992); *Cook v. Sheldon*, 41 F.3d 73, 78 (2d Cir. 1994) ("It is now far too late

in our constitutional history to deny that a person has a clearly established right not to be arrested without probable cause."). Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. *See Dunaway v. New York*, 442 U.S. 200, 208 n.9 (1979); *see also Posr v. Court Officer Shield # 207*, 180 F.3d 409, 414 (2d Cir. 1999) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). The existence of probable cause is objective—the officer's subjective belief at the time of arrest is irrelevant—and determined by the totality of the circumstances. *See Illinois v. Gates*, 462 U.S. 213, 230-32 (1983); *Martinez v. Simonetti*, 202 F.3d 625, 633 (2d Cir. 2000) (citing *Wilson v. Layne*, 526 U.S. 603, 614 (1999)). Therefore, a probable cause determination must be made by examining "'what the officer knew at the time of the arrest and whether the officer was reasonable in relying on that knowledge.'" *Fox v. City of New York*, No. 03 Civ. 2268, 2004 WL 856299, at *5 (S.D.N.Y. Apr. 20, 2004) (quoting *Black v. Town of Harrison*, No. 02 Civ. 2097, 2002 WL 31002824, at *6 (S.D.N.Y. Sept. 5, 2002)). "Probable cause requires only a 'probability or a substantial chance of criminal activity, not an actual showing of such activity.'" *Thomas v. County of Putnam*, 262 F. Supp. 2d 241, 246 (S.D.N.Y. 2003) (Conner, J.) (quoting *Gates*, 462 U.S. at 244 ).

"An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Id.* (citing *Singer*, 63 F.3d at 119). The predicate for Officer Roth's conclusion that probable cause existed to arrest plaintiff for petit larceny was the sworn statement provided by one of the security guards. Plaintiff argues that Office Roth bore an obligation to investigate the veracity of the security guards' claim

given: (1) plaintiff's "vehement" denial of having committed the alleged crime; (2) the existence of a video recording of plaintiff's actions in the store; and (3) the security guards' failure to produce the allegedly purloined earmuffs. However, police officers are "'not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.'" *Caldarola v. Calabrese*, 298 F.3d 156, 168 (2d Cir. 2002) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997)).

Here, two security guards alleged that they independently witnessed plaintiff conceal earmuffs, with one swearing a Complaint/Information. True, the parties dispute whether plaintiff had actually exited the store at the time of his detention and who yelled what at whom at the time of plaintiff's arrest. Regardless, Officer Roth was presented with facts that would lead any reasonable police officer to believe that the crime alleged had in fact been committed. *See Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (noting that courts "have found probable cause where a police officer was presented with different stories from an alleged victim and the arrestee"); *see also Daniels v. City of New York*, No. 03 Civ. 0809, 2003 WL 22510379, at *4 (S.D.N.Y. Nov. 5, 2003).

### B. Qualified Immunity

Even assuming that probable cause was not established, Officer Roth is entitled to qualified immunity. "The doctrine of qualified immunity shields police officers acting in their official capacity from suits for damages under 42 U.S.C. § 1983, unless their actions violate clearly-established rights of which an objectively reasonable official would have known." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Qualified immunity is not merely a defense; it is also "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("The entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." (emphasis in original)). Accordingly, "the availability of qualified immunity ought to be decided by a court at the earliest possible opportunity—preferably at the outset of the case, at which point plaintiff's well pleaded allegations are assumed to be true, and defendant's version of the facts is immaterial." *Torres v. Vill. of Sleepy Hollow*, 379 F. Supp. 2d 478, 483 (S.D.N.Y. 2005) (citing *Saucier*, 533 U.S. at 200).

Qualified immunity can be established in three ways: (1) if defendant's acts did not violate a clearly established constitutional right; (2) if it remains unclear as to whether an exception permitted such acts; and (3) if, even though the law was clearly established, "'it was objectively reasonable for [the defendant] to believe that his acts did not violate those rights.'" *Sorensen v. City of New York*, 42 Fed. Appx. 507, 509-10 (2d Cir. 2002) (quoting *Robison v. Via*, 821 F.2d 913, 920-21 (2d Cir. 1987).

In a suit for damages based on an arrest allegedly without probable cause, courts must grant a defendant qualified immunity "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Golino*, 950 F.2d at 870; *see also Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Robison*, 821 F.2d at 921. In situations where probable cause is required, this standard requires something less than actual probable cause. *See Thomas*, 262 F. Supp. 2d at 247. This standard has been defined by the Second Circuit as "arguable probable cause," which

> exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that

> probable cause existed in the light of well established law. It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable.

*Id.* at 247-48 (quoting *Cerrone v. Brown*, 246 F.3d 194, 203 (2d Cir. 2001)).

Officer Roth arrested plaintiff for petit larceny based on the sworn Complaint/Information alleging that he had stolen a pair of earmuffs. Even if probable cause did not exist, there is no doubt that "arguable" probable cause existed, therefore entitling Officer Roth to qualified immunity.

### IV. <u>Monell Liability</u>

In order to hold a municipality liable under § 1983, a plaintiff must allege a link between the constitutional violation and an identifiable municipal policy, practice or custom. *See*, *e.g.*, *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). To establish the existence of a municipal policy or custom, the plaintiff must allege: (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees. *Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996). The doctrine of *respondeat superior* is insufficient to support a claim against a municipal employer, as are conclusory assertions of a custom or policy in the absence of factual allegations or inferences. *Zahra v. Town of Southold*, 48 F.3d 674, 658 (2d Cir. 1995).

Given this Court's determination that Office Roth had ample probable cause to effect plaintiff's arrest, and that, even if he did not, he was at least objectively reasonable in his determination of probable cause and thus entitled to qualified immunity, there was no constitutional violation and therefore no basis for finding the Town vicariously liable. *See Thomas*, 262 F. Supp. 2d at 250; *see also Smith v. Edwards*, 175 F.3d 99, 107 (2d Cir.1999) (summary judgment properly granted to municipality where Court held that plaintiff had suffered no constitutional violation because officer had probable cause to arrest).

## CONCLUSION

For all of the foregoing reasons, the motions of defendants the Town of Newburgh, Town Police Officer Roger S. Roth and Bon-Ton, Inc. for summary judgment are granted. The action is dismissed in its entirety with prejudice.

SO ORDERED.

Dated: White Plains, New York
April 6, 2006

*William C. Conner*
Sr. United States District Judge